Next case is number 25-1324. Devin Everton Barrett v. Attorney General of the United States. Stephen Sacco, American Friends Service Committee for Petitioner Devin Barrett. With the Court's permission, I will reserve three minutes for rebuttal. Before this Court is a matter in which the Board of Immigration Appeals and the government offer neither authority nor explanation for what amounts to a radical departure from agency precedent and treatment of supplementary evidence to motions to reopen and the satisfaction of the requirements under the Board's decision in matter of Lozada. Mr. Devin Barrett, an illiterate and, at the time of his immigration proceeding, detained man with a U.S. citizen daughter, Angel, and, at the time of his proceeding, U.S. citizen spouse, Teresa Gordy, was ordered deported as a consequence of ineffective assistance of counsel by an attorney named Michael Barrett, who incompetently scuttled Mr. Barrett's claims for relief under cancellation of removal and adjustment of status. And thereafter, Mr. Barrett directed his then-wife, Ms. Gordy, to file a bar complaint against Mr. Lambert and with the proper disciplinary authority, which she did. And, remarkably, the Board of Immigration Appeals found inferior that Mr. Barrett had failed to satisfy the Lozada requirement. You suggest it's not precedented, but in matter of a side, the Board did use the active voice saying that it's the non-citizen who needs to do that filing. Some courts have picked up on that and use similar language. Why shouldn't we also require that for the many reasons that have been laid out by the government that it be a first-person account? I'm not sure that the cases that Your Honor refers to were not dicta in that case, but the matter of Lozada is phrased in the passive voice, is filed, or a complaint is filed, and there's nothing in this circuit that would have changed it. Well, it's sort of presumed it's not filed by a friend or a neighbor or a child or a  Isn't that fairly assumed, that it's filed by the complainant, by the client? That presumption isn't articulated anywhere in Lozada, Your Honor. I know. That's why I said, isn't it implied? I don't think it's implied by anything in Lozada, and there's certainly nothing in this circuit that would have implied it. In fact, there actually is an unpublished BIA case. Was there any evidence that Pennsylvania or New Jersey or others, Delaware, have a history of bar complaints being filed by people other than the client? There is, Your Honor. We cited a case named Wright, an unpublished BIA case in which the mother of the petitioner filed the bar complaint, and the BIA had no qualms with it. The complaint was adjudicated by the Bar Association? It was filed with, I believe the facts of Wright say that it was filed by the mother of the petitioner, and in that case, the board considered the bar complaint issue. I'm not asking about the board. What I'm trying to get at, is it regular procedure for people other than clients to file complaints against lawyers, and then have the Bar Associations actually view them as properly filed and go ahead and adjudicate them? I'm not aware of that anywhere, but perhaps it's happened. I think you're ... I'm not aware of it either, and I think for good reason. I think that question falls well outside the four corners of the bar complaint requirement. There's no case law that I'm aware of in which the court asks what happens after the bar complaint is filed. Is there further correspondence with the disciplinary authority? What does the disciplinary authority do with that complaint? That question never comes up. That is well outside the requirement. The requirement is, the four corners of the requirement are, you file the bar complaint, and that's it. And if, according to matter of Melgar, there's an additional requirement that the complaint show a pattern of misconduct. But outside of that, there is no further requirement. There's no case law in which they look into, peer into, what happens outside the context of that bar complaint. I think if they did do that, it might go to the affidavit, the detailed affidavit, which is the first of the three rules out of requirements. The court might say, well, is this consistent with the affidavit? Does it undermine the affidavit? And if so, perhaps that would go to other elements. Barrett submitted an affidavit, right? He did. It was detailed. All right, but you focus heavily on his illiteracy, but if he's capable of filing an affidavit, why isn't he capable of filing a bar complaint? I mean, both of them are, if he's illiterate, and we take that at face value, he's going to need assistance either way, right? Yes. So, he could get assistance from somebody in filing the bar complaint in the same way he got assistance in filing an affidavit. Well, but there's no requirement that he receive assistance. The bar complaint on its face requires that it be filed. So, there's no way for him to anticipate... That's right, but I guess what I'm challenging you on is you seem to have a little bit of a cavalier assumption that as long as a bar complaint is filed, it matters not by whom it is filed, and I'm challenging you on that because I think you have to persuade us as to why that irregularity, I'm suggesting that it is regular for bar complaints to be filed by the client against the client's lawyer, and would you at least concede that's the regular procedure? I don't concede that's the regular procedure, Your Honor, because in the... You don't concede that complaints against lawyers filed with bar associations are filed by the client who's upset with the lawyer? I don't... You don't concede that? I don't concede that we have evidence of that in the case law, because the facts about who filed the bar complaint are so... Okay, then accept it as an assumption. Accept it for purposes of my hypothetical question that of the tens of thousands of bar complaints filed with bar associations, all of them or almost all of them are filed by a client. Okay, so accept that. We can accept that. Okay, so if that's the regular procedure, then I think you have the burden of showing us why the Lozada requirement can be satisfied by the highly irregular procedure of someone other than the client filing the bar complaint. Well, I think I would point out that the circumstances in this case are not typical of the example that you give of the 10,000 or however many complaints are filed each year. In this case, Mr. Barrett was detained and illiterate, and so he was in a more difficult position than your average person who might file a bar complaint against their lawyer. So he was not typical of the person who might file a bar complaint. All right, so that gets us to a subsidiary issue, which is, is your argument, yes, he didn't comply with Lozada typically, but he is to be excused from complying with Lozada because he was incarcerated and illiterate. No, my argument is that he did comply with Lozada, but even if the court were to find that he didn't, he also had good reason not to. But he did comply. I think that's clear, and I think that if you look at this court's precedent, the treatment of the third requirement, the bar complaint of Lozada, it's clear that while Lozada is a three-part test, the bar complaint is the weakest link in the chain. The board's conclusion is at odds, I think, with that established precedent. This court has concluded that where a petitioner succeeds in the first two prongs of Lozada, and here that success is uncontested, even failure to satisfy the third prong altogether is not necessarily failed to Lozada Movent, who shows substantial compliance. Why aren't you, why aren't you stopped here for making the argument that this, this does qualify as his complaint, when in earlier proceedings, as the government's pointed out, you took the position, or he took the position, that he hadn't filed a complaint, and we'd be then in a situation of looking for the reasoning for that. Well, again, I would just again point to Lozada's framing of the complaint requirement, that it matters that it was filed and not who filed it. I think that that is the case. But in the facts here, the administrative record does show that he directed Ms. Gordy to file it. I think in page three of our reply, we show that a number of parts of the record. Let's come back to the language that shows it's contemporaneously directed in a moment, but I want to follow up on a couple of Judge Hardiman's questions, because we have here the, in terms of the timing, am I correct that at the point he filed the complaint, he was proceeding pro se? Yes, at that point, he had discharged Mr. Lambert, and had already proceeded through his merits hearing. When he filed his affidavit, at that point, were you representing him? No, we were not representing him at that time. We only represented him after he had filed the affidavit. In fact, after he filed the complaint with the Bar Complaint. I'm not asking about the complaint, I'm asking about the affidavit. The affidavit in support of the motion to reopen. Were you representing him at that time? We were representing him at that time. We represented him in the motion to reopen, and so we represented him in drafting of the affidavit. And in terms of proxies, agents, third parties who do filings, I mean, it's fairly routine. And we even said in Ranci that our expectation was that the lawyer would file the disciplinary complaint on behalf of a petitioner. So we have some situations where we, in many courts, accept routinely that there'll be a representative doing the filing. But we also, at the other extreme, it wouldn't make any sense to say that anybody putting in some complaint with the disciplinary committee would qualify. And that a petitioner could look back at that and say, you know, well, my brother-in-law heard about these problems and, you know, and decided to send something in. Where do we draw the line? What is it that, you know, distinguishes those cases where we accept a representative like counsel in making that filing, and those other cases that would be too far removed to serve the purposes of Lozada? I think that's a good question, and I think it takes us back to the purposes of Lozada as articulated in Matter of Rivera and Matter of Melgar, and whether or not the bar complaint as filed fulfills those purposes. And I think here it certainly does. If I could repeat those purposes for the court. We're familiar with what they are, but what is it about this particular complaint that satisfies those criteria? What is the principled rule that we could apply in any consistent way? Well, the bar complaint having been filed served the purpose of policing the immigration bar, right? The disciplinary authorities put on notice that Mr. Lambert engaged in a pattern of misconduct. It served that purpose. It served the purpose of showing that there was no collusion between Mr. Lambert and Mr. Barrett. In many ways, it showed that even more so, given that Ms. Gordy did the filing. Ms. Gordy was the one paying Mr. Lambert. Her interest was aligned with Mr. Barrett in making sure that Mr. Lambert's representation was competent. And so it was all about adjustment of status by virtue of the marriage to Gordy, correct? That's how this case started out. That's right. And cancellation of removal by virtue of his relationship to her and to his daughter, Angel. That's right. And so she was very much, her interests were very much aligned with Mr. Barrett. She having- Until they weren't. Until they weren't. But at the time, she was also able to read. And so she was in a better position to know what applications were filed, were not filed, what information they contained. But doesn't it make sense that there would be no application for asylum withholding of removal and CAT protection when this case was really about adjustment of status through the spousal relationship? Well, no, Your Honor. I think there's no guarantee that the court was going to approve those applications for adjustment of status or cancellation of removal. And so a competent attorney would file all three applications to make sure- Not when you didn't have a factual basis for it. But I think here there is a factual basis for the asylum. And in the motion to reopen, we included evidence. What's the evidence that Lambert was apprised of that factual basis at the time they were pursuing adjustment of status through the spousal relationship? Well, the factual basis came from, oh, that Mr. Lambert was apprised of it. Yeah. I mean, clients come into the office, they say, hey, I'd like to get legal here, adjust status. And, okay, what's your story? Well, I'm married to someone. And, okay, we can do it that way. That doesn't necessarily provoke a discussion about political persecution or torture or anything like that. I believe Mr. Barrett, in the record, states that he attempted to engage his lawyer about his fear of return to Jamaica. All right. Maybe on rebuttal you could explain that in some detail, because I'm cloudy on that as to whether the lawyer had been apprised in any way of any potential claim for asylum withholding or cat protection. It seemed to me, from my recollection of the record, that that came much later as a sort of, you know, last-ditch effort to stay in the country once the adjustment of status through the initial route failed. I understand, Your Honor, and I would note as well that the board never contests that the representation was incompetent. The ineffective assistance of counsel itself is never challenged in this case. So at no point does the board argue that Lambert's representation was competent. So that's actually not an issue in this case. That's an uncontested fact. Can you update us on the status of the prima facie approval for relief under the Violence Against Women Act? Yes. So it was submitted with the supplemental evidence showing that prima facie approval was granted to Mr. Barrett, showing that he was likely to succeed on the merits through USCIS in his affirmative application for cancellation under VAWA, for adjustment under VAWA, I'm sorry. When did that come through? Well, that came through before the second final. I mean, how long ago? That was May of 2023. But you apprised us in August of 2025 that an extension had been granted. That's right. So that means it continues to pend before the USCIS. These applications go on for some years, unfortunately. But there's no further developments? No. USCIS has continued to delay its adjudication. That was my question. So should we be staying our decision in this case until a final decision on that matter is made? That would be prudent, I think, if the court's decision were to change given that approval. All right. Thank you. We'll hear you on rebuttal. Ms. Perlmutter? Good morning. May it please the Court. Alexa Perlmutter for the Attorney General. The court should deny in part and dismiss in part this petition for review. It should deny the petition as it relates to the ineffective assistance of counsel claim because it was not an abuse of discretion for the board to conclude that petitioner did not file a bar complaint or reasonably explain his failure to do so, and his ex-wife's letter did not otherwise account, did not otherwise fulfill the purposes of the bar complaint. In reaching this finding, the board did exactly what this court instructed it to do. It did not apply Lozada mechanically, but rather looked holistically at the record, first to the letter, then to petitioner's affidavit, then to the supporting documents to rationally conclude that the purposes were not fulfilled. Let's focus on the complaint here because we do have a number of cases where the BIA has accepted the filing of a family member with a complaint, in addition to what was where it was filed by the husband, in Ray Hernandez, where the board accepted an affidavit, the brother's affidavit that indicated the complaint had been filed. That's correct, Your Honor. And the board did not deny, did not find noncompliance with Lozada here simply because another person filed the complaint. The board looked further to see if the purposes of that complaint requirement were fulfilled. That is what the Third Circuit has explained the inquiry is. Certainly, there may be cases where, for example, a parent of a minor child would be filing a complaint, and that might be a situation here. But on this record where the letter at issue conflicts in material ways with petitioner's own affidavit, with the record. Okay, for example, with petitioner's own affidavit, petitioner's main ineffective allegation is that Mr. Lambert did not provide him the opportunity to apply for asylum or fear-based relief. The letter does not mention that whatsoever. The letter also states that Mr. Lambert did not file the cancellation application and evidence when it was filed. That's record pages 1,106 to 1,113. Furthermore, there's factual inaccuracies regarding the dates of the hearings in the  Those are not factually correct. The letter says there was no communication with petitioner when petitioner states on record page 951 references at least one phone call. I do think it's important to step through the procedural history of where this letter came from and what it has been used for in these proceedings. We have, you're pointing to a couple of discrepancies, essentially additional information, not really inconsistent information, between the Gordy letter and the affidavit. But the bulk of what is conveyed in the letter does match up with what's in the affidavit. Was there a requirement in Lozada? If we're not, we're no longer, as you've put it, we're not talking about saying this is not qualifying as a petitioner's complaint because it's filed by a third party. That's off the table. So the reason we're saying that this filing, which could have been by the petitioner himself, it sounds like the government's accepting that. Treat this as the petitioner himself making this filing, right? Well, no, Your Honor, because of these, you know, whether they're inconsistencies or omissions, the significant discrepancies between Miss Gordy's characterization of the hearings and the proceedings and petitioner's later characterizations. We do not think what the board found to be important is that there is no evidence that Miss Gordy's letter reflected petitioner's experience with his attorney. Now, that is key because petitioner here is the one who wants to reopen his removal proceedings. So it is or is not significant that it's a third party that sent in the filing? Because I thought you said a moment ago that the reason that it was rejected by the board was not that it was a third party doing the filing. No, it was not because, as Your Honor stated, counsel can make a filing. And if this letter indicated that petitioner was sitting with his ex-wife and his experience, his experiences were reflected in the letter, that would go toward the purposes of Lozada. I'd like to discuss these purposes because the court has emphasized that all purposes must be fulfilled. We're familiar with the purposes, but if the issue you're raising is that it's not clear that he was involved, knowledgeable about it, directed it. That's correct. But the record here has the letter itself opening, saying that she's doing the filing on behalf of Devin Barrett. It closes saying, Devin agrees with me entirely, and Devin understands what's going on, with that explanation that he's illiterate and detained, which implies that's why she's doing the filing. Then we have Gordy's affidavit in support of the motion to reopen that says that Devin always told me what was going on with his cases. And we have Barrett's affidavit in support of the motion to reopen that says, Teresa filed a complaint alleging ethical violations against Michael for me. And then the disciplinary committee itself receives that letter and says that it's asking for more information on Devin Barrett's complaint against Michael Lambert. Why isn't that sufficient on this record to align the person who's doing the filing as a legitimate representative doing it on behalf of a petitioner? Let me take those points one by one with regard to Miss Gordy's statements in the letter that she's filing this on behalf of Devin Barrett. None of his experiences with his attorney are reflected in that letter. Allegations of ineffective assistance of counsel are the board is looking at these to determine whether petitioner had a full and fair hearing. And if his experiences are not reflected in the bar complaint, it does not serve the purposes of increasing the board's confidence in the validity of the claim, reducing the need for an evidentiary hearing. This letter only increases the need for an evidentiary hearing because of the significant inconsistencies and omissions with regard to the affidavits, which provide unclear explanations here that there was any sort of contemporaneous knowledge of the complaint. That is not clear from the face of the affidavits. And the board did not abuse its discretion. It was not irrational given the inconsistencies in these documents for the board to conclude that he had no contemporaneous knowledge. With regard to whether the disciplinary committee received Miss Gordy's letter, that is also not clear from the record. This this letter was dated December 30th, 2020, nominally pro se submitted to the disciplinary committee. The disciplinary committee followed up 10 months later only to petitioner's current counsel stating that it was in response to Devin Barrett's complaint. In the record, it is not clear. This is page 301 in the record where the disciplinary committee's email is. It is not clear to what it was responding. It references multiple events that post date the letter and then asks for follow up within seven days. And that follow up, again, is not reflected in the letter. The board rationally concluded that petitioner did not show he was advancing the purposes of Lozada, which, again, are to increase the board's confidence in the validity of the claim. Would the government have us infer that Mr. Barrett filed his own separate complaint and that that's the complaint of Devin Barrett? It is not clear what occurred. It is not clear what occurred in the record. I'd like to again note that petitioner's current counsel, Mr. Barrett, stated on page 201 of the record he had his intake with current counsel in February of 2021. And then in February of 2021, submitted Miss Gordy's letter to excuse his failure to file a bar complaint. And then he proceeded with current counsel through on direct appeal and then later a motion to reopen. He has been with current counsel for nine months prior to the filing of this motion to reopen. As this court stated in Rancy, it is the job of current counsel to file a bar complaint that serves the purposes of Lozada. There is no reason why current counsel, who, again, had been on the record representing him for nine months, did not do so. It is unclear, again, what triggered the disciplinary to reach out to current counsel 10 months later. But I don't think it is clear from the record that it is Miss Gordy's letter. Well, on the one hand, we have them saying that and we have one thing that we have on the record being filed with the committee. You're asking us to speculate that there was something else that was filed. Well, I'm just asking because the standard of review here is whether the board acted irrationally, arbitrarily or contrary to law. That is a high standard to overturn the board's decision. What what what is a petitioner who is detained and illiterate and proceeding pro se to do to get a complaint filed with the committee? Why isn't it if you're pro se and in that situation being illiterate and detained, asking your closest family member to file it on your behalf? In fact, the only way to proceed. Well, there's no evidence here, again, that he asked Miss Gordy to file this complaint when it was filed. That is a post hoc explanation as to what happened. But it is not clear from the record that he knew it was being filed or critically that his experiences were reflected in the complaint. If there is evidence that his specific qualms with Mr. Lambert were reflected in this complaint. But it is not with regard to the main allegation of ineffective assistance. A cancellation was already the petition. The letter says on its face that she's filing it on behalf of Devin Barrett. And it says that Devin agrees with me. Present tense agrees with me entirely. And he understands everything going on. Agrees with her in regards to asking for a refund and saying that he was not satisfied with his attorney's communication. But with regard to the main allegation that his attorney did not provide him the opportunity to apply for asylum and withholding of the room, withholding of removal and cat. That is wholly underdeveloped here. And in fact, Miss Gordy, neither in her letter or her affidavit, states that Mr. Lambert never asked her if Mr. Barrett feared return. And in fact, on record page that that Lozada requires that there be the filing of a complaint and that establish a pattern of misconduct. With respect to our three circuits agree that Lozada is allegation specific. The Eighth Circuit has said, well, a petitioner may have a litany of facts showing counsel's assistance was ineffective. A court may only consider those facts if they are first incorporated in a complaint that satisfies Lozada. The Second Circuit has agreed the fact that he complied with Lozada's requirements for other purported errors did not give petitioner free reign to argue whatever he pleased before the board. That's at 602 F third at 485. The Sixth Circuit likewise agrees. And this is because the purpose of the bar complaint is to reduce the need for an evidentiary hearing as to petitioner specific allegation of ineffectiveness. Because that's what's important here. If petitioner was not provided the opportunity to apply for asylum and withholding of removal, that that would have rendered that would that's the specific allegation that needs to be analyzed. And without that in the letter, and indeed, Mr. Lambert saying on page 932 that he had multiple conversations with Miss Gordy and states that there's no asylum or cat issue in this case. It is not clear from the record that that that any sort of ineffectiveness occurred. And this letter did not substantially further the purposes of developing that record in order for the board to assess the claim. Let me ask you a couple of questions. First, is it your theory of the case that this never was an asylum withholding and cat case? This was always just a simple spousal adjustment status case. And only when that fell apart, did it sort of go to this Hail Mary phase of we got to find something here. Is that your theory of the case? Correct, Your Honor. It was only adjustment of status. It was in cancellation of removal. And critically, with the assistance of current counsel on page 1029 of the record, current counsel files a motion for continuance in order to provide time to apply for additional relief. Not identified by Mr. Lambert. This is February of 2021. Only identifying adjustment of status. Never asylum. That is through current counsel after he had his intake with current counsel. The asylum claim only comes to the table in October of 2021. Much later. And in fact, Mr. Barrett expressly denied fearing return to Jamaica when he was arrested in 2020. That's on page 1029 of the record. All right. My second question is I want to follow up on Judge Krause's questions to make sure I understand the government's position. As I understand your position, the government accepts the fact that third parties can file complaints with bar disciplinary boards on behalf of clients who are alleging ineffective assistance of counsel. That's correct. All right. So we established that. Third parties can file. It might be a lawyer. There are many ways. Quite often it's, you know, my lawyer let me down and you don't need a lawyer. So people just file those with letters. If you can lawyer up, you lawyer up. Other times there might be extenuating circumstances. A parent files on behalf of a child or here a spouse files on behalf of an incarcerated spouse. So we agree on all that. Correct?  All right. But as I understand the but, make sure I understand the government's position, is that one of the risks inherent in a third party filing a complaint is the possibility that when the third party files the complaint on behalf of the client, the third party might have a vision of what happened or didn't happen that is at odds or discrepant with what actually did happen for the client. And that you're pointing to that in this case as saying, look, what Gordy said and what Barrett said, don't square up. There are important discrepancies. I think we're going to hear on rebuttal they're not important discrepancies. They're minor. But the point here is that while the third party can file the complaint, what matters is that the complaint be consistent with the actual alleged ineffectiveness lodged by the client. That's correct. And I think that there is not a lot of case law as to what a complaint needs to contain. But this court's decisions in Fadiga and in Rancy in thinking about the purposes of Lozada as a whole and thinking about in the absence of a bar complaint, what the purposes, what has to be in the record. And in those cases, there were robust communications with prior counsel that largely conform. That's a quote from Fadiga, largely conform with the alien's account of events. And here we do not have that in the record. I think what what the final point I'd like to make on this. Before we leave that, is your is your point in response to Judge Hardiman that what matters here is that the particular inconsistency, the omission of this seeking this additional relief, that that makes this inconsistency an intolerable one. But other if there were other you're not suggesting a rule that there has to be a perfect match in all cases between a third party filing and a petitioner's complaint. I would actually have a more question. And just should the standard turn on whether it's a third party filing it or the person themselves? Like, why is actually that relevant to whether there needs to be consistency between the complaint itself? And the claim forming the basis for the complaint. Well, I think certainly when a third party's filing, you're opening up to the danger of these inconsistencies occurring. And in that case, it's all the more important that the third party's account match up with the petitioner's account, because that provides the board with evidence that there was communication there, that the complaint reflects petitioner's experience. And if the court finds that the board here abused its discretion in finding this very large omission and inconsistency, it would really be undermining the purposes of the bar complaint and essentially finding that anything, no matter from whom and no matter how general, could satisfy the purposes. Can you go back on it? I'd like to hear the answer to the question about whether you're saying any inconsistency or that the inconsistency here is such a significant one that that's what makes this not qualify as a valid third party filing. Right. I think I would return to the standard of review and say, if the board perhaps lodged on a very inconsequential, tiny inconsistency, that might be an abuse of discretion, but wasn't an abuse of discretion, this large inconsistency that really forms the basis. What is the large inconsistency? The large inconsistency is petitioner here wants to, for the first time, apply for asylum and withholding of removal and cat relief. Never before has he done. So the crux of your argument is that that is a fundamental point. The nature of relief, the way to adjust status, et cetera, is so fundamental that that has to at least track. And it was reasonable for the board to point that out when the cancellation claim later in the board's decision. It already denied that on discretionary grounds. So whether or not, you know, there was some sort of hardship evidence that was not introduced by Mr. Lambert, that ultimately did not matter because petitioner had the opportunity through current counsel to explain why he merited a favorable exercise of discretion and did not do so. So all that's left would be asylum and withholding of removal. And so the board reasonably zeroed in on that as a major inconsistency with this bar complaint and found that the record was not developed enough in order to fulfill the purposes of WSSADA. And my question is, would that still be the case if the client himself had filed the bar complaint? Or does that inconsistency become relevant just because we have the combination of the inconsistency and the third party filing? No, I think that would still be relevant if the client was filing the bar complaint, because the question is, is this record being developed such that the board has confidence in the claim to reopen the entire proceeding? And again, when this letter was first submitted, the only additional relief sought that Mr. Lambert did not seek is the adjustment of status. I find that really surprising, because it sounds like you're adding a new requirement that doesn't appear anywhere in the cases that there be a match between the filing of what's in the complaint that's filed, even firsthand by a petitioner. And in his affidavit at a later time in connection with the motion to reopen, where does that appear in any of the BIA or circuit cases? Well, the court has made clear in Araujo, Trujillo, Fadiga, and Rancey that all purposes of WSSADA of the bar complaint requirement must be fulfilled. And two of those purposes, increasing the board's confidence in the validity of the claim and reducing the need for an evidentiary hearing. And third, identifying misconduct. I was going to point to that, because the second WSSADA requirement is evidence that counsel has been informed of the allegations of ineffective assistance and been given an opportunity to respond. So if one allegation of ineffectiveness is made and the lawyer has a chance to respond, and then there's a pivot to something that's totally different that the lawyer doesn't have an opportunity to respond to, then we've got a problem under WSSADA. Right. That would certainly be a problem. And it would also be a problem if the disciplinary committee was informed of general allegations and not this specific main allegation of the asylum issue. Why is that so? I thought the whole purpose of WSSADA was to give notice of what constitutes a pattern of misconduct so that the disciplinary committee could sort of police the immigration bar. And I mean, whenever a complaint is filed, all that does is trigger the disciplinary committee's investigation, which may turn up all sorts of other things. Right. I think that's true, Your Honor. And I think that's why the board not only stopped at looking at the letter, not only stopped at the declaration, but also looked to this email at page 301 where the disciplinary committee is asking for further information. It is trying to see if that purpose was furthered with regard to this allegation. But we can't. We can't. I mean, you're not suggesting that a petitioner has to wait for the full investigation to play out and be resolved before proceeding with the motion to reopen, including the affidavit. No, Your Honor, I'm not suggesting that. I'm suggesting that on this record with the inaccuracies, factual inaccuracies in Ms. Gordy's letter, the incorrect statement that the cancellation application was never filed, and yet it was filed, and the failure to mention the fear-based relief, and in addition, stating that there was no communication when on the record there was communication, the board reasonably looked further to see if the purposes were fulfilled, finding that that letter did not fulfill the purposes itself. So I think the board was taking an extra step here. Your Honors are probably familiar with board decisions. They're typically very short. This is an extended decision. The board engaged in a substantive analysis of this claim, looked clearly at the record. It did not just see a letter written by someone else and say, nope, this isn't going to serve. It looked to the letter, it looked to the affidavit, and it looked to the record. And I think that that shows the board was not acting irrationally. It was not simply reacting. It was thinking logically about the purposes of Lozada as this court has instructed it to do. And this court's decisions in Fadiga and Ramsey have engaged in this close reading of the filings that petitioners have presented to see if the purposes are fulfilled, and that is exactly what the board did here. There are no new novel requirements. This is not a radical departure. This is the board really thinking about what was submitted and finding that it did not serve the purposes that this court in Fadiga have indicated must be served. And I think if this claim were to go back to the asylum claim, we have the bar complaint that doesn't mention it at all. We have petitioner's affidavit stating that he was never asked about his fear. He never states that he said he had a fear. Then in the record, we have him expressly stating to ICE that he did not have a fear. We have Mr. Lambert stating on the record that he talked many times with Ms. Gordy and determined that there was no asylum issue. So, you know, the board was looking to see if this claim was developed enough to move forward. I'd also like to push back. It is not an uncontested fact that Mr. Lambert was ineffective. That claim just simply wasn't reached yet because the board denied on procedural grounds. Are there any cases in appellate courts, not the board, but circuit courts, where the disciplinary counsel reached out and said, we want to look into this, but we need a little information and the client doesn't respond? I'm not aware of any cases like that. And again, there's no... You're not aware of any out there even just in the administrative realm that didn't make it to... I'm not aware of that. But it's the first time I've seen it. I'm struggling with how that ties into Lozada because we've got competing concerns here, I think. We certainly have concerns that we don't want the immigration bar taking people's money and not representing them properly in immigration cases. And conversely, we don't want lawyers who are doing what they're supposed to do, being falsely accused of ineffectiveness because people are doing whatever they can to try to stay in the country. Those are pretty starkly competing interests, right? So what should we do when there is a complaint filed that does provoke a response from disciplinary counsel and then the client, the immigrant, the alien client doesn't respond? Are you advocating for a bright line rule that says that sort of non-response, that cutting off of the investigative process to see whether there is or is not ineffectiveness should result in a bright line rule that Lozada is not complied with? No, I don't think that whatsoever. I think that this court has instructed the board to look at the totality of the circumstances with regard to the Lozada prongs. They are looked at as a whole. When a complaint is not filed, the court looks to what counsel said in response. The court looks to the affidavit. All right, well, I'm looking at the BIA's opinion and it says disciplinary counsel on October 1, 2021 emailed Respondent's Counsel. Counsel, so we're not in the realm of incarcerated illiterate. There's a request to counsel requesting additional documents and information to aid in their investigation of Mr. Lambert. However, neither the Respondent's motion nor his supplement reflect whether counsel responded to this request for information or if not, why not? How much weight are we supposed to put on that? I mean, I think the reason why the board reached this issue is because of its findings in the prior paragraph, that there was no evidence that Mr. Barrett had a personal hand in composing this letter. This goes back to the fear-based relief not being part of the case until very late. I think it says this last sentence in the prior paragraph. The record does not indicate that the disciplinary counsel was made aware of these allegations. And that these allegations being you let me down because you did not file fear-based relief on my behalf. That's correct. Which gets us right back to the government's initial theory of the case, which is this case isn't a fear-based relief case. It's a failure of a spousal adjustment and cancellation case. Correct. And I think the board reasonably then turned to the only other evidence they had, which was this email from the disciplinary committee. And perhaps, you know, again, I don't want to speculate, but perhaps if there was a robust response in the record, I'm not saying that's required in every case. But I'm saying on this record, where you have these inconsistencies, where you have a new claim for relief being raised months later with counsel who has been in the case for a long time. I think the board did not abuse its discretion, was not irrational to look at this and say, well, nothing was, you know, he did not explain how he aided in this purpose. And this purpose was increasing the board's confidence in the validity of the claim, reducing the need for an evidentiary hearing on this issue, and really identifying a key piece of misconduct. How should we think about, aren't we putting the cart before the horse, where the allegation is ineffective assistance and failing to investigate potential eligibility for relief, including the asylum and the cat claim? But it seems like you're saying because that wasn't raised earlier and is now being raised as he identifies the need to reopen, that that's going to undermine the value of the complaint that was filed. I mean, the ineffective assistance he's alleging is the reason that he didn't raise those claims earlier, right? I'm not sure if I follow exactly, Your Honor. Can you repeat the question? Sure. I mean, I'm wondering if you're, it sounds like we're sort of putting the, you're asking us to put the cart before the horse with the absence of evidence of, or a claim as to asylum appearing at an earlier stage. When the whole point is that the reason it's not appearing at an earlier stage is the ineffective assistance, as he alleges, in failing to investigate that potential basis for relief. I think I understand. I think I would point to, you know, Petitioner's current counsel certainly knows the purposes of Lozada, knows what this court and the board think about them. The 2nd, 8th, and 6th circuits have agreed that allegations of ineffectiveness must be specific in compliance with Lozada. And Petitioner had, you know, approximately nine months once he retained current counsel to file an additional bar complaint that raises this specific allegation in order to properly preserve it before the board with regards to Lozada. So this is not a situation where Petitioner, again, was still detained. He was not detained since May of 2021, where he did not have counsel. He had counsel on direct appeal the months preceding his motion to reopen and then for the motion to reopen. So again, on the totality of circumstances in this case, I do not think the board abused its discretion in finding that this significant basis for relief here that was not mentioned in the bar complaint was not, you know, it was not complied with with regards to the Lozada requirements. And when your honors issued the order asking about remand, that's really what's at issue. Again, cancellation has already been denied on discretionary grounds after Petitioner had the opportunity through current counsel to present whatever evidence he wanted. And asylum would be the only thing that's left. And even if, you know, the court thinks that the generalized allegations, other allegations in the letter, you know, might suffice for some purposes, the only basis for relief left is asylum, and that is not in the letter. And again, there's agreement among the circuits. This court has not appeared to address it, that ineffectiveness is allegation specific. And this is because the board is really looking to whether the claimed ineffectiveness present prevented him from seeking asylum. So having, you know, even a minimally developed record on this issue is necessary. I think the board reasonably found that this complaint, this letter did not do so. So the government's view is that if there's that omission of something significant, like the very claim that remains at issue, and it wasn't in the initial complaint, that Lozada would be satisfied with a sort of cure of a second complaint being filed with the disciplinary committee? I think if a second complaint was filed that raised the asylum issue, you know, and it was in the record, the board could have considered those. Yeah, I do. I think that if there was certainly a second complaint filed that cured these issues that the board found that his experiences were not particularly reflected, that the asylum issue was not raised, and that he then, you know, that would be evidence of following up with those allegations. So I do think, yeah, that would be just a different record, and the board would assess it there. I would also like to point out that the board did not find the first prong of Lozada satisfied with regard to whether his affidavit really set out the scope of representation. So that just wasn't addressed. What we have here is simply the bar complaint. It didn't go any further on the ineffective assistance of counsel. All right, thank you very much, Ms. Perlmutter. Let's hear a rebuttal from Mr. Sacco. Your Honor raised the question, a weighing of policy concerns. Do we want to police the bar, bad lawyers? We don't want to falsely accuse good lawyers. Actually, within the four corners of the bar complaint, if you look at the purposes, none of those purposes concern protecting good lawyers. The purposes concern policing bad lawyers. And so if we're concerned with the bar complaint, the bar complaint's only concern is policing bad lawyers. If we have other concerns outside the four corners of the bar complaint, I think they go to the other elements. Well, I'm just going to ask, go back to your claim that this would chill the filing of complaints. I understand how you might make an argument to make them tougher, or less likely someone would think that their effort would be met with success. But chill suggests it's actually going to deter or scare them from it. How could that possibly be the case? The government is asking that the bar complaint reflect details in the affidavit, that they be symmetrical, which would make the affidavit duplicative, but also would require the person filing the bar complaint to get their facts in a row first before they file it. It would require them to understand something about their legal relief before they file. Well, are we sure legal? I mean, how much legal relief? I thought about a basic set of claims, like was I tortured or was I not tortured? They don't need to know that before they file the bar complaint? It's not clear, and there's nothing in the record that would imply that Ms. Gordy had an understanding of what the difference between cancellation of removal and asylum was. Yeah, but shouldn't that be a basic level of responsibility before there's a complaint being filed claiming that a lawyer did not properly raise it? I think that she does claim that in general language. The bar complaint says that applications that should have been filed were not. She doesn't specify what they were, but she does raise the issue. How far does that go? My lawyer wasn't good, and I can just say that, and then that gives me license to say the lawyer should have filed any claim that exists? I think in the bar complaint, she lists a lack of competence and candor with the court, failing to communicate with the client. But the problem a little bit, right, is if one later thinks there's any element of prejudice, one has to understand what precisely the complaint is saying was done wrong. And therefore, you have to understand what the relief otherwise would be. Just simply saying that a lawyer was inattentive or came below a certain performance threshold doesn't get it across the finish line in terms of later establishing possibility for relief. I think Your Honor is articulating the purpose of the detailed affidavit in the Lozada motion. The Lozada motion has three parts for a reason, and the affidavit is more important than the bar complaint for a reason, because it makes out those details that you're articulating, that here are the exact things that my lawyer did not do. Here was this lawyer's incompetence spelled out in detail. The bar complaint is merely there to serve the purposes that are articulated by the board, to police the bar, to show that the disciplinary authority is put on notice. But how can you police the bar when a third party makes a complaint about the lawyer let me down in one way and the client says the lawyer let me down in a different way? That's not policing the bar. That's putting lawyers in a position where they're playing a whack-a-mole game. But the bar complaint triggers an investigation, and I think that serves the policing. Yeah, but the investigation needs to be rational, right? And that's why here there was a request for more information, and there's no evidence that the disciplinary counsel received the information that was requested, right? I think that's true, but I think if the board had a real issue with that, they could have criticized the affidavit. I think, in other words, if the failure to… Well, the board did criticize the affidavit in the sense that the board highlighted the fact that the affidavit, quote, raises allegations against Mr. Lambert that are not asserted in Ms. Gordy's letter. That's true, but I think it was improper for the board to take that fact and use it to impugn the bar complaint or use it to allege that the bar complaint was not satisfied. If the board had an issue with that fact, it should have taken it up with the detailed affidavit, which should have either supported or contradicted whatever assertions of incompetence were on the record. So that's, in other words, saying the affidavit is what matters, not the bar complaint? I think this court has said that repeatedly in its precedent, that the bar complaint is flexible, that as long as the applicant shows substantial compliance, that's enough. And the board even says in one of its decisions that… Help us define substantial compliance. I think substantial compliance under the purposes of serving the bar complaint rule. A bar complaint is filed with the proper disciplinary authority, and it contains allegations of a pattern of misconduct. That's it. And here, that was done. A pattern of misconduct was articulated. Should there be any care for conservation of resources? Because the more general the bar complaint, isn't it the more broad-based the investigation? I mean, when does it end? How many resources are supposed to be devoted to investigating a general bar complaint that says the attorney just was incompetent? I don't think there's any bar complaint that would be filed without an investigation to follow up. So I guess that's what I'm suggesting, that should there be insubstantial compliance, is it relevant? How many resources are going to be expended investigating and following up on a bar complaint if it doesn't really substantially mirror what eventually ends up being the affidavit and it's broad-based and we allow there to be a generalized claim of incompetence? I think the bar authority is more in a better position to expend resources to investigate bad lawyers than is the pro se movement, whose job it is to merely file the bar complaint and make sure that it makes out a pattern of misconduct. Here, he met that burden. The government's taken the position that the affidavit, I mean, the motion to reopen and the affidavit are focused on a particular basis for ineffective assistance. That is a certain conduct as being the deficient performance. That it's not unreasonable to say, well, in filing the complaint, the third step of Lozada and alerting the bar committee to that ineffective assistance, that it should be the same ineffective assistance. You should be identifying at least the same deficient performance. Is it really such a high bar to impose on petitioners if you add on to that, that it can be cured, if you will, by a subsequent complaint being filed with that particular relief if new counsel identifies that additional deficient performance? Again, I think in this case, Mr. Barrett had no way to anticipate that the board was going to take issue with the bar complaint that was filed. Therefore, he had no way of knowing, and the counsel had no way of knowing, that a second complaint had to be filed. If you look at the case law that I think Your Honor mentioned, it's clear that third parties can file bar complaints and that the bar complaint in this case listed all of the issues with Mr. Lambert's incompetent representation in general terms. And there's no precedent that says that it has to be in specific terms, or that they have to name exactly which applications were not filed when, as long as it says applications were not filed. There's no way for the litigant to know that. And I think, again, to require counsel to file a second bar complaint that adds additional detail, be both duplicative of the affidavit, and place this larger burden on counsel to do so. I want to point out, the court had questions about asylum in the record. On page 275 of the administrative record, it shows that Mr. Lambert and Mr. Barrett discussed asylum eligibility in October of 2020, before Mr. Lambert was dismissed. And what was the nature of the discussion? In his affidavit, he states that they discussed it and they discussed his eligibility. And so that was a conversation where they discussed whether or not he was eligible for the relief. Now, maybe Mr. Lambert concluded that he was not eligible for it, but I think that would be improper, given that. And if he did conclude so, he clearly didn't communicate that to his client, which goes to lack of communication in the record. All right. Thank you very much, Mr. Sacco.